IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERMAINE BLACKWELL | * | |
| Petitioner | * | |
| v | * | Civil Action No. RDB-14-1538 |
| FRANK B. BISHOP, JR. and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * * | |
| Respondents | * | |
| | *** | |

## MEMORANDUM OPINION

In a supplemental answer to this Petition for Writ of Habeas Corpus, Respondents assert that the petition is time-barred and is nevertheless without merit. ECF 15. Petitioner Jermaine Blackwell has filed a Reply to the supplemental answer. ECF 18. The operative issues have been fully briefed; no hearing is necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons stated below, the Petition shall be dismissed and a certificate of appealability shall not issue.

### BACKGROUND

On January 13, 2003, Blackwell, his co-defendant Ronnie Burston, and three to four unidentified people, approached two individuals –Margaret Gray and Antonio Judkins -- who were standing on the 1300 block of Harlem Avenue in front of their apartment selling marijuana. ECF 15-2 at 111-12; ECF 15-3 at 7. When Ms. Gray determined she did not have the amount of marijuana Blackwell and his companions wanted to purchase, she walked in the apartment building and up the stairs where her apartment was located, to get more. ECF 15-2 at 112; ECF 15-3 at 7.

One of the men put a gun to Mr. Judkins' back and forced him up the stairs to the apartment. ECF 15-3 at 7. Once at the apartment door, they kicked the door in because the lock would not open, forced Mr. Judkins to lay on the floor, forced Ms. Gray into a bedroom, and robbed them. ECF 15-2 at 112-13; ECF 15-3 at 7. Mr. Judkins' brother James Randolph, who was also in the apartment, was heard engaging in a struggle in another room which ended with a fatal gunshot to Mr. Randolph's chest. ECF 15-2 at 110-14; ECF 15-3 at 98. Mr. Judkins identified Blackwell as the man who approached them on the street to buy marijuana and who initiated the forceful entry into their apartment. ECF 15-2 at 120-21. Additionally, Mr. Judkins and Ms. Gray testified that two men had guns, one of whom was Blackwell. ECF 15-2 at 125-26; ECF 15-3 at 7-9. The other gunman held a gun to Mr. Judkins' back while he laid on the kitchen floor. ECF 15-2 at 125-26.

After the gunshot Blackwell and the other intruders fled the apartment. ECF 15-2 at 114. Several uniformed police units were already in the area investigating an unrelated incident. *Id*. at 58-59. Blackwell and Burston were observed running into an alley at the back of the 700 block of Carrollton Avenue. *Id*. at 65. Officer Roy Hinman pursued the men, spotted Blackwell in the alley, ordered Blackwell to put his hands up and Blackwell complied. *Id*. When Officer Pedro Vargas arrived to assist Hinman in detaining Blackwell, Blackwell began resisting efforts to detain him, injuring Vargas and requiring several other officers to intervene. ECF 15-3 at 124-25; 132-33; 137-38. Officers assisting in Blackwell's arrest and Blackwell sustained injuries requiring medical attention as a result of the struggle. *Id*. at 125-26; 138, 140

Burston was located by Hinman in a nearby backyard and apprehended by Hinman. ECF 15-2 at 65. During his pursuit, Hinman heard a heavy object hit the ground and had observed Burston running with one hand in his jacket as if holding a weapon, leading him to believe that a gun had been dropped in the area. *Id*. at 64. A nine-millimeter handgun was recovered, and

forensic testing indicated it matched a cartridge found at the scene of Mr. Randolph's murder. *Id*. at 98-99.

Prior to trial, Blackwell and Burston were offered plea deals. The following colloquy took place at the bench, outside of the jury's presence:

>THE COURT: All right. Here's what the Court will offer on Burston. He can have the life suspend all but 25 or he can have 30. Blackwell – what were you offering on Blackwell?
>
>MR. YEE: I don't (unintelligible) my offer. I'd ask the Court –
>
>THE COURT: Are the as comparable?
>
>MR. YEE: I believe (unintelligible) he approached them and for him to be in charge.
>
>MS. BLEDSOE: And I would disagree with that.
>
>THE COURT: (Unintelligible).
>
>MS. BLEDSOE: (Unintelligible) record. He has one offense (unintelligible).
>
>THE COURT: He has one prior?
>
>MS. BLEDSOE: One prior.
>
>MR. YEE: He has one prior. Possession of (unintelligible).
>
>MS. BLEDSOE: Possession of (unintelligible).
>
>THE COURT: Wait a minute – wait a minute.
>
>MR. YEE: He's on probation (unintelligible) minor and probation. That's why his guidelines are the 30 on the second.
>
>THE COURT: (Unintelligible) Okay.
>
>MR. YEE: (Unintelligible).
>
>THE COURT: Life suspend all but 20 or 25. That's the best I can do.
>
>MS. BLEDSOE: All right.

ECF 15-2 at 14-15.  Counsel for both Blackwell and Burston then left the bench to confer with their clients after the judge left the bench.  *Id*. at 15.  After the judge returned to the bench, Blackwell's counsel approached with a question:

> MS. BLEDSOE:  Your honor this might be a completely inappropriate question.  Please tell if it is.  But, I think it's important for my client to know (unintelligible) if in fact a jury would find him guilty is it this Court's inclination to (unintelligible) guidelines –
>
> MR. YEE:  I'd object to that (unintelligible) Your honor.
>
> THE COURT:  (Unintelligible) valid question for any individual who offered (unintelligible) plea.  But, I will tell you exactly the way this Court is.  The way this Court operates the guidelines are what they are, guidelines.  The Court takes into consideration all of the evidence that is presented in the case.  Participation level.  Everything.  And we use the guidelines – we being the Court – we use the guidelines as simply that, guidelines.  I have no strong (unintelligible) to him or against him.  But, to answer your question.  There are guidelines.
>
> MS. BLEDSOE:  That's the only answer I can give him (unintelligible).
>
> THE COURT:  I understand.  They're merely guidelines.

ECF 15-2 at 15-16.  After breaking for lunch and reconvening at 2:00 p.m., counsel returned to the courtroom and Ms. Bledsoe indicated that Blackwell would be going to trial.  Burston took the plea deal.  ECF 15-2 at 21; 22-40 (Burston's plea colloquy).

On November 3, 2003, after a five-day jury trial in the Circuit Court of Maryland for Baltimore City, Blackwell was found guilty of felony murder, first degree burglary, conspiracy to rob, first degree assault, second degree assault and three counts of use of a handgun in a crime of violence.  ECF 15-1 at 162.  On December 16, 2003, the court sentenced Blackwell to life for felony murder, twenty years consecutive for first degree burglary, twenty years consecutive for conspiracy to rob, twenty-five years consecutive for first degree assault, ten years consecutive for second degree assault, and twenty years consecutive for each of the handgun crime of violence counts.  ECF 15-6 at 12-13.  The total sentence imposed was life plus 135 years consecutive.  *Id*.

4

The sentence imposed by the court exceeded that which was sought by the State's Attorney who asked for imposition of a life sentence with the remaining sentences concurrent to the life sentence. *Id*. at 7-8. The presiding judge made no statement regarding her rationale for imposing the lengthy sentence.

Blackwell filed a direct appeal challenging the motion court's finding that certain evidence was admissible and alleging that the evidence was obtained during an illegal stop or arrest. ECF 15-1 at 130. The Maryland Court of Special Appeals affirmed Blackwell's convictions in an unreported opinion issued on October 13, 2005. *Id*. at 129-142. The mandate issued on November 14, 2005. *Id*. at 143. Blackwell's petition for writ of certiorari to the Maryland Court of Appeals was denied on January 12, 2006. *Id*. at 144.

On July 9, 2012[1] Blackwell filed a post-conviction petition raising claims of ineffective assistance of counsel in connection with counsel's advice about going to trial or accepting the plea offer. ECF 15-1 at 145-57. After a hearing held on February 12, 2013, Blackwell's petition was denied. ECF 15-7 (post-conviction transcript); ECF 15-1 at 162-76. Blackwell filed an application for leave to appeal the denial of post-conviction relief with the Maryland Court of Special Appeals. ECF 15-1 at 177-82 (Application for Leave to Appeal); 183-93 (Amended Application); 194-200 (Supplemental Application). On April 24, 2014, the Court of Special Appeals denied the application. *Id*. at 201-202. The mandate issued on May 27, 2014. *Id*. at 203.

In his petition filed with this Court, Blackwell asserts he was denied his Sixth Amendment Right to effective assistance of counsel during trial, in his attorney misinforming him of what he should face if he chose to go to trial and not accept the plea offer of life suspend all but 20 years

---

[1]  As discussed *infra*, Blackwell also filed a motion for modification of sentence which was docketed by the Circuit Court for Baltimore City on March 16, 2004 and remained pending until July 25, 2012 when it was denied. ECF 15-1 at 126-28; 161.

or straight 25 years and for not making clear the potential consequences of going to trial. ECF 1 at 6. Blackwell asserts that counsel advised him that he wouldn't be hurt if he went to trial and admitted she did not think he would get a sentence greater than that which was offered before trial. *Id.* at 8.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*.*" *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have

"resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## ANALYSIS

**A.     Timeliness of the Petition**

Under the provisions of 28 U.S.C. § 2244, the one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  However, under § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

"[T]he one year limitation period is also subject to equitable tolling in 'those rare instances where' due to circumstances external to the party's own conduct 'it would be unconscionable to enforce the limitation against the party.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002), citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  To be entitled to equitable tolling, a

8

petitioner must establish that either some wrongful conduct by Respondents contributed to his delay in filing his petition or that circumstances beyond his control caused the delay. *See Harris*, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id*. The Fourth Circuit has made it clear that, prior to dismissing a pro se petition for writ of habeas corpus, "a district court should furnish notice that simply warns the pro se petitioner that his . . . action will be dismissed as untimely unless the petitioner can demonstrate that the petition was filed within the proper time period." *Hill*, 277 F.3d at 708.

In a Memorandum Opinion and Order issued on September 4, 2014, Blackwell's Petition for Writ of Habeas Corpus was dismissed as untimely. ECF 9 and 10. This Court found that Blackwell's one-year limitations period under 28 U.S.C. § 2244(d) began to run on April 13, 2006 and was tolled on February 27, 2007, the date he filed his first post-conviction petition in the Circuit Court for Baltimore City. ECF 9 at 3. The limitation period began to run again on July 21, 2007, when Blackwell voluntarily withdrew his post-conviction petition. *Id*. Blackwell filed another post-conviction petition on July 9, 2012, well after the remaining portion of the one-year limitations period expired. *Id*.

Blackwell argued at the time that a motion for modification of sentence filed on his behalf on March 16, 2004 and denied on July 26, 2012, operated to toll the limitations period pursuant to 28 U.S.C. § 2244(d). ECF 1 at 3; ECF 9 at 4. Because the state of the law at that time was that motions filed pursuant to Maryland Rule 4-345 did not toll the limitations period, this Court found that Blackwell's petition was untimely. ECF 9 at 4, citing *Roberts v. Maryland,* Civ. No. JKB–11–1227, 2013 WL 5882786, at *2–4 (D. Md. Oct. 28, 2013); *Tasker v. State,* Civ. No. AW–11–1869, 2013 WL 425040, at *7 (D. Md. Jan. 31, 2013) *aff'd,* 517 F. Appx. 172 (4th Cir. 2013), reh'g

9

denied June 3, 2013 (finding *Tasker* waived Fourth Circuit review of issue by failing to include it in appellate brief).

On April 17, 2019, the United States Court of Appeals for the Fourth Circuit issued its opinion in *Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019) holding that a motion for reconsideration of sentence filed pursuant to Md. Rule 4-345 tolls the one-year filing period under § 2244(d). *Id*. at 195-98. Blackwell then filed another § 2254 petition[2] which this Court construed as a motion filed pursuant to Fed. R. Civ. P. 60(b)(6) seeking relief from the judgment issued by this Court on September 4, 2014. ECF 11 at 2-3. In granting the motion, this Court adopted the reasoning relied upon by the Honorable Deborah K. Chasanow:

> Here, unlike in *Gonzalez* [*v. Crosby*, 545 U.S. 524 (2005)] and *Moses* [*v. Joyner*, 815 F.3d 163 (4th Cir. 2016)], the decision in *Mitchell v. Green* overturned an unbroken line of cases in this district that, until the attorney representing Mr. Mitchell thoroughly briefed the issue, appeared beyond question. The Fourth Circuit had considered two cases that appeared to raise the issue, but resolved them without reaching the point. Petitioner cannot be faulted for not seeking a certificate of appealability under the circumstances. As soon as the Fourth Circuit decided *Mitchell v. Green*, he sought relief from the judgment. Respondent concedes that he acted in a timely fashion.

ECF 11 at 3 quoting *Savoy v. Bishop*, DKC-13-751, ECF 40 at 3.

After granting Blackwell relief from judgment, the Court required Respondents to file a Supplemental Answer addressing the merits of Blackwell's claims. ECF 11. As noted, Respondents contend that Blackwell's petition is still untimely because his motion for modification of sentence was filed one day late. ECF 15.

Respondents reason that Blackwell's convictions became final on direct appeal on Wednesday April 12, 2006, the last day he could have filed a petition for writ of certiorari in the

---

[2] The petition was written on pre-printed forms for filing a 2254 habeas petition and was docketed as a new case. *See Blackwell v. Bishop, et al.*, Civil Action RDB-19-2307 (D. Md. 2019). That civil case was closed after this Court granted Blackwell's Rule 60(b) motion.

10

United States Supreme Court.  ECF 15 at 14-15.  They further assert that *Mitchell* held that a motion for modification of sentence qualifies as "collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) but remind the Court that an application for collateral review must be properly filed to toll the limitations period.  *Id*. at 16.  In Respondents' view, Blackwell's motion for modification of sentence was not properly filed because Md. Rule 4-345 required, and still requires, that such a motion be filed within 90 days after a sentence is imposed.  *Id*. at 20.  Here, Blackwell was sentenced on December 16, 2003, making his motion for modification of sentence due on or before March 15, 2004.  *Id*. at 21.  Blackwell's motion was docketed on March 16, 2004, according to the record submitted by Respondents.  *Id*.

The record before this Court includes a computerized print-out of docket entries in Blackwell's case showing a motion for modification was docketed on March 16, 2004 (ECF 15-1 at 10) and a copy of the actual motion with the cover letter sent by Blackwell's attorney to the Baltimore City Circuit Court which is dated March 9, 2004 (ECF 15-1 at 126-28).  Notably, counsel's office address is on North Calvert Street, the same street the court is located.  ECF 15-1 at 128 (cover letter).  There is no indication on the letter whether it was delivered by mail or it was placed in a night drop box and the record contains no verification from Blackwell's trial counsel regarding the manner in which the motion was delivered.  Further, Respondents have not provided a date-stamped copy of the motion[3] and the computer printout of the docket entries may or may not accurately reflect the date the motion was delivered to (as opposed to docketed by) the clerk's office.  *See Hackney v. State*, 184 A.3d 414, 417 (Md. Ct. of App. 2018) (discussing meaning of "filed"), *see also Mole' v. Jutton*, 846 A.2d 1035 (Md. Ct. of App. 2004) (clerk received notice of

---

[3] Illustrative of the point is Judge Stewart's order denying Blackwell's motion for modification of sentence which the judge dated July 25, 2012 but is date-stamped "received" on July 26, 2012.  ECF 15-1 at 161.  Other documents in the State Record bear the Clerk's date-stamp; the motion for modification does not.

11

appeal when it arrived at the post office box because the clerk's office had set up the post office box for its own convenience). Given the relative weakness of the evidence presented to establish the motion was not properly filed as well as the brief, and the one-day delay involved, this Court declines to dismiss the petition as untimely and instead considers the merits of the claims raised by Blackwell.

**B.    Ineffective Assistance of Counsel**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland*, 466 U.S. at 686; *see also Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has explained that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that

counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

13

Where, as here, ineffective assistance of counsel is alleged in the context of counsel's role in the decision whether to accept a plea offer, the Supreme Court has held that to satisfy *Strickland*'s prejudice prong[4] a habeas petitioner must show: (1) that "but for the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have been presented to the court"; (2) that "the court would have accepted its terms"; and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Satisfying the deficient performance prong requires a showing that counsel's advice fell below the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The Fourth Circuit recognized "a difference between a bad prediction within an accurate description of the law and gross misinformation about the law itself." *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995) *overturned on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996) (en banc). Thus, if counsel "simply underestimates the sentence, there may not be ineffective assistance" but where counsel misstates the statutory maximum or minimum sentence, counsel has failed to "apprise [herself] of the applicable law and provide [her] client[] with a reasonably accurate description of the law" which is deficient performance. *Ostrander*, 46 F.3d at 355 citing *United States v. Lambey*, 974 F.2d 1389 1394 (4th Cir. 1992) *see also Christian v. Ballard*, 792 F.3d 427, 448-49 (4th Cir. 2015) (finding no deficient performance where petitioner's interpretation of what counsel advised was at the crux of his ineffective assistance of counsel claim); *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979) (deficient performance found where counsel provided grossly inaccurate information regarding parole eligibility date); *Ross v. Wolfe*, 942 F.Supp.2d 573, 582 (D. Md. 2013) (finding deficient performance where counsel included

---

[4]   In *Lafler* the parties conceded that counsel's performance fell below an acceptable standard. 566 U.S. at 163.

"gross misinformation" regarding eligibility for Patuxent placement and "intentional misrepresentation" regarding prosecutor's expectations).

The post-conviction court based its analysis in part on a misstatement of Blackwell's claims.  The court did not acknowledge Blackwell's withdrawal of two of the claims asserted in his petition:

> Petitioner alleges that his trial counsel, Ms. Bledsoe, failed to 1) advise him of the Life suspend all but 20 or 25 years straight plea offered by the Court; 2) failed to advise him of the potential outcome of and consequences of going to trial; 3) failed to advise him that he could receive more than his sentencing guidelines of 20 to 30 years if he went to trial and 4) advised him to reject the plea offer of 30 years offered by the State.

ECF 15-1 at 165.  At the post-conviction hearing, however, Blackwell withdrew the first and fourth claims.  ECF 15-7 at 11.  Respondent concedes that the post-conviction court "did not acknowledge that Blackwell had withdrawn the allegation" that counsel failed to inform him of the plea offer "and yet based its rejection of all of his ineffective assistance claims wholly on his lack of credibility for having made the allegation, it is unclear whether the post conviction court's credibility finding properly accounted for the record before it, including Blackwell's withdrawal of the claim."  ECF 15 at 41.  Indeed, the post-conviction court stated in pertinent part that:

> The petitioner would like this Court to believe that after the judge mediated a plea for the petitioner, gave a brief recess so that the petitioner's attorney could speak with him in the courtroom without the presence of a judge, that upon the trial judge leaving the courtroom Petitioner's attorney did not inform him of the plea that was just negotiated at the bench. Further, the petitioner would like this Court to assign no significance to the fact that upon the conclusion of the brief recess to discuss the plea offers, Ms. Bledsoe asked to approach the bench to ask one more question that would factor into the petitioner accepting or rejecting the plea offer- asking about the Court's inclination to follow sentencing guidelines. In light of Ms. Bledsoe's line of questioning, in light of the fact that the attorney for petitioner's co-defendant asked for a recess because, "Both of these gentlemen are very seriously considering" and considering Ms. Bledsoe's consistent testimony that she advised her client of the plea and post trial consequences, this Court cannot make such illogical conclusions.

> Lastly, this Court finds that the **petitioner lacks credibility**. Petitioner's first few allegations are grounded in the fact that his trial counsel failed to communicate to him. However, his last allegation of ineffective assistance of counsel in his initial petition avers that Ms. Bledsoe advised Petitioner to reject the plea offer of 30 years. In one breath he is claiming that his attorney failed to communicate a plea offer to him, while in the next breath he is claiming that his attorney advised him to reject a plea offer. Petitioner cannot have it both ways. Petitioner's claim that his attorney failed to communicate to him, failed to advise him of plea offers and failed to communicate the consequences of proceeding to trial is seriously undermined by his allegation that his attorney told him about his sentencing guidelines, told him about his appellate rights and advised him to reject a plea.
>
> Upon consideration of the trial transcript, the testimony presented at the post conviction hearing, the credibility of petitioner's trial counsel and petitioner's lack of credibility, this Court finds that the sequence of events as presented by the petitioner are unsubstantiated. Consequently, relief on the abovementioned grounds is denied.

ECF 15-1 at 168-69 (emphasis supplied).

Respondent, however, does not rely on deference to the post-conviction court's factual determination to support their position that counsel did not render ineffective assistance of counsel when she advised Blackwell about the decision to go to trial or take the plea. Where the "state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Christian*, 792 F.3d at 444 quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Examination of the testimony considered by the post-conviction court establishes that denial of this claim had a reasonable basis.

At the post-conviction hearing, counsel testified that she met with Blackwell at the Baltimore City Detention Center to tell him that the plea offer was life suspend all but 20 years. Blackwell asked her what he had to lose, and she said, "I didn't think a judge would sentence you – I didn't think a judge would penalize you for trying a case." ECF 15-7 at 26. She admitted she

was "not experienced enough[5] to realize that if he had been convicted, he would most likely get a life sentence." *Id*. "And I didn't think, in my wildest imagination at that time, that he would get life plus 165 [sic] years." *Id*. at 26-27.

Blackwell testified that Ms. Bledsoe never told him that he thought when counsel told him the guidelines for him would be 18 to 30 years, it meant that if he went to trial he could not get more than what the sentence suggested by the guidelines. ECF 15-7 at 15-16. On cross-examination, Blackwell admitted that he went to trial to prove his innocence because he did not "pull the trigger." *Id*. at 18-19. Ms. Bledsoe denied telling Blackwell that he would not get more than what his guidelines indicated but told him she did not believe that he would get more than what was offered. *Id*. at 31-32. She also stated that she does not encourage anyone to go to trial or to take a plea; recalling that her "standard line . . . has always been, it's your life, and it's your decision." *Id*. at 33.

The communication between Blackwell and his attorney regarding the choice between taking a plea and going to trial falls within the range of statements that are simply bad strategic guesses as to sentencing and therefore is not deficient performance. *See Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) (attorney's "bad guess" as to sentencing does not justify the withdrawal of the plea and is not deficient performance unless based on a gross misstatement of the law). Here, Blackwell's counsel advised him that he could possibly receive a life sentence for the murder charges and erroneously predicted he would not get much more. Thus, there was a reasonable basis for the post-conviction court's conclusion that counsel did not render ineffective assistance to Blackwell.

---

[5] Ms. Bledsoe advised the post-conviction court that Blackwell's trial was her first murder trial. ECF 15-7 at 24-25.

Additionally, much of what Blackwell told the post-conviction court was based on his interpretation of what his attorney had said. *See* ECF 15-7 at 16 (Blackwell stating he "believed [counsel] meant that I wouldn't get hurt regardless" because he could not be sentenced beyond the guidelines). A criminal defendant's interpretation of advice provided by counsel, as opposed to counsel's gross misstatement of the law, cannot form the basis of a successful ineffective assistance of counsel claim. Blackwell's trial attorney denied telling him that he could not be sentenced beyond the guidelines as that was not her practice in consulting with criminal defendant clients. ECF 15-7 at 31-32. This is not a case where Blackwell was "grossly misinformed" and "relie[d] upon that misinformation" to form his decision to go to trial. *Strader*, 611 F.2d at 65. Blackwell undermined any notion that he was misguided by misinformation provided to him by counsel when he admitted at the post-conviction hearing that he wanted to go to trial to prove his innocence. ECF 15-7 at 18-19. As such, he has failed to overcome the presumption that counsel rendered constitutionally adequate assistance. *See Harrington*, 562 U.S. at 104 (requiring application of "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance").

For these reasons, Blackwell's Petition for Writ of Habeas Corpus must be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck*, 137 S.Ct. at 773. The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Hill may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

_JANUARY 28, 2022_
Date

_/s/ Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE